UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRENT WARREN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-00508-GCS |
| | ) |
| ROB JEFFREYS, | ) |
| KWAME RAOUL, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendants' Motion for Summary Judgment filed on September 13, 2022. (Doc. 34). Defendants argue that their Motion should be granted because Plaintiff's request for injunctive relief became moot upon his release from the Illinois Department of Corrections ("IDOC"), and moreover, it is barred by the Eleventh Amendment. (Doc. 34, p. 3-4). Defendants also argue that Plaintiff's claim for compensatory damages is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at p. 4. Lastly, Defendants believe that Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). *Id.* at p. 5. On March 27, 2023, Plaintiff filed a response in opposition, contesting each of Defendants' arguments. (Doc. 46). For the reasons outlined below, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 34).

PROCEDURAL BACKGROUND

Plaintiff Trent Warren filed this suit pursuant to 42 U.S.C. § 1983[1] on March 11, 2022, against IDOC Director Jeffreys, Illinois Attorney General Raoul, the Illinois Department of Corrections, and the Parole Review Board. (Doc. 1). During that time, Plaintiff was in the custody of the IDOC at Pinckneyville Correctional Center. (Doc. 1). In his Complaint, Plaintiff alleges that Defendants' failure to release him to begin his two-year term of mandatory supervised release ("MSR") when he became eligible on September 7, 2021, constitutes cruel and unusual punishment and violates his right to Equal Protection. (Doc. 9, p. 2). On May 4, 2022, the Court completed a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and construed it into the following claims:

> **Claim 1:** Fourteenth Amendment Equal Protection claim against Defendants because 730 ILCS 5/3-3-7(B-1)(1) treats indigent individuals differently than wealthier individuals;
>
> **Claim 2:** Eighth Amendment cruel and unusual punishment claim against Defendants based on involuntarily prolonged detention;
>
> **Claim 3:** Defendants lengthened Plaintiff's ten-year term to register as a sex offender because the clock does not begin until he is released from IDOC;
>
> **Claim 4:** Eighth Amendment violation for holding Plaintiff in very restricted custody up to 23 hours a day, and then denying him the

---

[1] Rather than a writ of habeas corpus, 42 U.S.C. § 1983 is the appropriate vehicle for prisoners who do not contest the facts or duration of custody but challenge the procedures used for parole-release decisions. *See Moran v. Sondalle*, 218 F.3d 647, 650-651 (7th Cir. 2000) (citations omitted). *See also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (stating that "§ 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner.").

> opportunity to learn reintegration skills via MSR;
>
> **Claim 5:** Fourteenth Amendment Due Process claim against Defendant Raoul for failing to ensure that Plaintiff understood the consequences and terms of MSR at the time he pled guilty to this offense in March of 2017.

(Doc. 9, p. 2). Claims 1 through 5 survived screening against Defendants Jeffreys and Raoul. *Id.* at p. 4. However, Plaintiff's claims against the Illinois Department of Corrections and the Parole Review Board were dismissed because the Eleventh Amendment provides immunity to these state agencies. *Id.* at p. 3.

## FACTUAL BACKGROUND

Plaintiff's Grievance Record contains five relevant grievances that concern his release date for MSR. (Doc. 34, p. 2). Each will be discussed in turn.

*Grievance No. 569-02-21*

Grievance No. 569-02-21 was filed by Plaintiff on February 23, 2021. (Doc. 34, Exh. 1, p. 29). In this grievance, Plaintiff claims that he made repeated requests to Counselor King for assistance with various social services resources to prepare for his release and that his requests were ignored. *Id.* at p. 27. Plaintiff reportedly informed Counselor Hill of this issue, but she informed Plaintiff that she could not help. *Id.* at p. 28. Plaintiff received a response from Counselor J. Reid on February 25, 2010, who indicated that Plaintiff must be "within 6 months of MSR date to request a social security application." *Id.* The Counselor also indicated that Counselor King responds to inmate requests in the order which they are received. *Id.*

The grievance was received by the Grievance Office on April 1, 2021, and it was reviewed by a Grievance Officer on April 20, 2021. (Doc. 34, Exh. 1, p. 27). The Grievance

Officer recommended that Plaintiff's grievance be denied because CHAMP records revealed that Counselor King had been in contact with Plaintiff regarding preparations for his MSR. *Id.* On April 22, 2021, the Chief Administrative Officer ("CAO") concurred with the Grievance Officer's determination. *Id.* Plaintiff sought to appeal the CAO's decision on October 20, 2021. *Id.* The Administrative Review Board ("ARB") received Plaintiff's grievance on October 25, 2021, and the ARB deemed the appeal untimely on November 12, 2021. *Id.* at p. 26.

*Grievance No. 1385-06-21*

Grievance No. 1385-06-21 was submitted by Plaintiff on June 28, 2021. (Doc. 34, Exh. 1, p. 14). In this grievance, Plaintiff alleges that "field services" is misleading him and "telling him things that are unture" regarding his MSR. *Id.* Plaintiff notes in the grievance that his two parole sites were denied – but that his mother was told there were halfway houses specifically for persons with "sex offenses" in Illinois. *Id.* at p. 15. Plaintiff states that he believes field services is lying to him because they informed him that there are "no halfway houses or reentry programs available" for him. *Id.* The grievance was received by a Counselor on July 1, 2021, and July 14, 2021. *Id.* The Counselor recommended that the grievance be denied because Plaintiff was "assigned to the Parole Re-Entry Group and Sex Offender Services since 4/13/21 . . . [and that] field services department ha[d] done their part by reporting the grievant's need for housing." *Id.*

The grievance was received by the Grievance Office on July 16, 2021, and it was reviewed by a Grievance Officer on September 23, 2021. (Doc. 34, Exh. 1, p. 12). The Grievance Officer recommended that the grievance be denied because "based on all

available information . . . Field Services has performed their job according to policy and procedure." *Id.* The CAO concurred with the Grievance Officer's determination on September 23, 2021. *Id.* Plaintiff sought to appeal the decision on October 20, 2021. *Id.* The ARB received Plaintiff's Grievance on October 25, 2021, and the ARB denied it on November 12, 2021, again noting that the appeal was untimely. *Id.* at p. 11.

*Grievance No. 1251-06-21*

Grievance No. 1251-06-21 was filed by Plaintiff on June 9, 2021 (Doc. 34, Exh. 1, p. 23). In this grievance, Plaintiff alleges that Pinckneyville Correctional Center failed to restore "the time that was [taken] away from a disciplinary ticket . . . from 2019[.]" *Id.* Plaintiff further noted that his "out date" was listed as September 7, 2021, but his request for restoration of good conduct/statutory good time notification was once again denied on June 7, 2021, due to the need for "more observation." *Id.* Plaintiff requested that the determination be reconsidered. *Id.* On June 11, 2021, a counselor reviewed Plaintiff's grievance and recommended that the grievance be denied, noting that he could "resubmit his request [for review] on August 27, 2021." *Id.*

The Grievance Office received Plaintiff's grievance on June 21, 2021. (Doc. 34, Exh. 1, p. 21). The grievance was reviewed by a Grievance Officer on August 30, 2021. *Id.* The Grievance Officer recommended that the grievance be denied because "[the] Grievant [was] not statutorily eligible to receive . . . Earned Program Sentence Credit due to his offense." *Id.* The CAO concurred with the Grievance Officer's decision on September 3, 2021. *Id.* On October 20, 2021, Plaintiff appealed the CAO's decision to the ARB. *Id.* The ARB received Plaintiff's Grievance on October 25, 2021. *Id.* at p. 18. The ARB denied the

appeal as untimely as it was received more than 30 days past the CAO's decision. *Id.*

*Grievance No. 650-03-21*

Grievance No. 650-03-21 was submitted by Plaintiff on March 8, 2021. (Doc. 34, Exh. 1, p. 16). Plaintiff grieved that he had "been denied to receive his remainder of 30 days of sentence credit . . . and [he has] not caught a ticket since August 2020." *Id.* Plaintiff requested that he be "awarded the statutory good time" as relief. *Id.* Plaintiff originally submitted the grievance for emergency review. *Id.* However, the CAO denied emergency review on March 10, 2021. *Id.* Plaintiff's Grievance was then reviewed on April 2, 2021, by a counselor who recommended that the grievance be denied because "the decision to approve or deny GCC restoration rests with the administration." *Id.*

The Grievance Office received Plaintiff's grievance on June 22, 2021. (Doc. 34, Exh. 1, p. 19). The grievance was reviewed by a Grievance Officer on September 2, 2021. *Id.* The Grievance Officer recommended that Plaintiff's grievance be denied because "the denial was signed by the CAO and is an administrative decision . . . [and further noting that] Grievant is not statutorily eligible to receive Earned Program Sentence Credit due to his offense." *Id.* at p. 20. The CAO concurred with the Grievance Officer's determination on September 3, 2021. *Id.* at p. 19. Plaintiff appealed the CAO's decision to the ARB on October 20, 2021. *Id.* The ARB received Plaintiff's grievance on October 25, 2021, and the ARB denied it on November 12, 2021, noting that the board received the appeal 30 days after the date of the CAO's decision. *Id.* at p. 18.

*Grievance No. 2069-02-21*

Plaintiff submitted Grievance No. 2069-02-21 on September 5, 2021. (Doc. 34, Exh. 1, p. 6). In this grievance, Plaintiff grieved that "IDOC [had] violated [his] 14th Amendment and 8th Amendment [rights] for failing to provide him a placement on September 3, 2021[,] . . . forcing him to serve additional time in prison." *Id.* As relief, Plaintiff requested that he be "awarded 10 months of good time." *Id.* The CAO conducted an emergency review of the grievance on September 8, 2021, but the CAO determined that the grievance was not an emergency. *Id.* A counselor received Plaintiff's grievance on September 8, 2021, and conducted a review of the grievance on September 30, 2021; the counselor concluded that the grievance was a duplicate which had already been answered. *Id.*

The Grievance Office received Plaintiff's grievance on December 7, 2021. (Doc. 34, Exh. 1, p. 4). A counselor reviewed the grievance on April 25, 2022, concluding that the grievance should be denied because field services had investigated the seven identified host sites available to Plaintiff and concluded that they should be denied. *Id.* at p. 4-5. The CAO concurred with the Grievance Officer's decision on April 28, 2022. *Id.* On May 4, 2022, Plaintiff appealed the grievance to the ARB. *Id.* The grievance was received by the ARB on May 19, 2022. The ARB denied the grievance on June 23, 2022. *Id.*

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which

would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but instead is to determine whether a genuine issue of material fact exists. *See National Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is up to the Court to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent.[2] *Id.* at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of

---

[2] *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This comports with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, it affords prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the PLRA's exhaustion requirement. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to

hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a Counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint."[3] 20 ILL. ADMIN. CODE § 504.810(a). Should the prisoner not be satisfied with the Counselor's response, the prisoner can then submit a formal grievance to the prison's Grievance Officer. *Id.* at (a)-(b). The Grievance Officer must review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the Grievance Officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO shall review the findings and recommendations from the Grievance Officer and advise the inmate of his or her decision in writing. *Id.* If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the

---

[3] This does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. *See* 20 ILL. ADMIN. CODE § 504.810(a).

Grievance Officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* If the CAO classifies the grievance as an emergency grievance, the CAO shall "expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). The inmate will also be informed by the CAO if it is determined that the grievance is non-emergent. *See* 20 ILL. ADMIN. CODE § 504.840(c). In such a case, notification will be made in writing that the inmate should "resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lastly, there are certain circumstances where a prisoner may exhaust his or her administrative remedies by filing a grievance directly with the ARB. *See* 20 ILL. ADMIN. CODE § 504.870. Those circumstances include grievances addressing: (1) placement in protective custody; (2) involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and (4) all other issues, with the exception of personal

property issues, that occurred at a previous institution." *Id.* The ARB "shall review and process . . . [such] grievance[s] in accordance with Section 504.850." *Id.*

## DISCUSSION

Defendants put forward three arguments in their Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 34). First, Defendants argue that Plaintiff's release from IDOC precludes him from obtaining the equitable relief he seeks. *Id.* at p. 3-4. Second Defendants argue that Plaintiff is barred from claiming compensatory damages against the Defendants pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at p. 4-5. Third, Defendants argue that Plaintiff has failed to exhaust his administrative remedies because he failed to comply with the IDOC Grievance Procedures. Ultimately, the Court agrees with the Defendants' assertion that Plaintiff has failed to exhaust his administrative remedies pursuant to the required procedures. As such, the Court need not address the Defendants' first two arguments in favor of summary judgment.

According to § 504.850(a), "if after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint, or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." *See* ILL. ADMIN. CODE § 504.850(a). However, when construing prisoner filing deadlines, federal courts generally apply the "prison mailbox rule." *See Taylor v. Brown*, 787 F.3d 851, 858-859 (7th Cir. 2015). Jurisprudence within the Seventh Circuit indicates "that the prison mailbox rule, which holds that a prisoner's

court filing is deemed 'filed' the day it is placed in the prison mail system, applies to exhaustion." *See Smith v. Brookhart*, Case No. 3:20-CV-00830-MAB, 2022 WL 306837, at *7 (S.D. Ill. Feb. 2, 2022). *See also Burt v. Harrington*, Case No. 13-CV-794-NJR-DGW, 2017 WL 468211, at *7 (S.D. Ill. Feb. 3, 2017) (stating that "though the defendants would like us to presume that § 504.850 and the ARB's own procedures do not recognize the "mailbox rule," they offered no support (and still don't) for the proposition."); *Dole*, 438 F. 3d at 811 (7th Cir. 2006) (holding that prisoner had timely filed an appeal to the ARB by placing it in the prison mail system even though it was never received by the ARB). Accordingly, a prisoner has filed a grievance in accordance with the IDOC Grievance Procedures when the prisoner places it in the mail.

Here, Plaintiff did not place Grievance Nos. 569-02-21, 1251-06-21, or 650-03-21 in the mail within 30 days of the CAOs decision.  The CAO denied Grievance No. 569-02-21 on April 22, 2021, and later denied Grievance Nos. 1251-06-21 and 650-03-21 on September 3, 2021. (Doc. 34, Exh. 1, p. 19, 21, 27). Plaintiff appealed all three of these grievances to the ARB on October 20, 2021, which is outside the 30-day deadline set forth in the IDOC's Grievance Procedures. *Id.*

Plaintiff, however, did timely exhaust Grievance Nos. 1385-06-21 and 2069-02-21 in this regard. The CAO denied Grievance No. 1385-06-21 on September 23, 2021, and Plaintiff appealed the grievance on October 20, 2021. *Id.* at. p. 34. Plaintiff thus met the 30-day deadline with three days to spare. As for Grievance No. 2069-02-21, the CAO denied the grievance on April 28, 2022, and Plaintiff appealed the grievance to the ARB on May 4, 2022. *Id.* at p. 4. This was also timely as Plaintiff appealed the grievance within

six days of the CAO's decision.

Despite the timeliness of Plaintiff's appeal to the ARB for Grievance Nos. 1385-06-21 and 2069-02-21, other substantive and procedural defects prevent the Court from finding that these grievances were properly exhausted. Grievance No. 2069-02-21 is not exhausted because Plaintiff prematurely filed suit before fully proceeding through the IDOC grievance process. "[A] prisoner who does not properly take each step in the administrative process has failed to exhaust his . . . remedies." *Pozo*, 286 F.3d at 1024. Consequently, "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; [as] the district court lacks discretion to resolve the claim on the merits even if the prisoner exhausts intra-prison remedies before judgment." *Thomas v. Allison*, Case No. 22-cv-834-RJD, 2023 WL 5624704, at *5 (S.D. Ill. Aug. 31, 2023) (quoting *Ford*, 362 F.3d at 401). The ARB did not come to a final determination on Grievance No. 2069-02-21 until June 23, 2022. (Doc. 34, Exh. 1, p. 3). However, Plaintiff filed the present lawsuit on March 11, 2022. (Doc. 1). Thus, Plaintiff prematurely filed the lawsuit before Grievance No. 2069-02-21 was fully resolved by the ARB.

Plaintiff also did not fully exhaust Grievance No. 1385-06-21 because the grievance did not adequately notify prison administrators that Plaintiff had an issue with either Defendant Raoul's or Jeffreys's conduct. The Illinois Administrative Code requires that an inmate's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). While an inmate is not required to identify individuals by name, he must

include as much descriptive information as possible. *Id.* The Seventh Circuit has determined that the purpose of naming individuals within a grievance is not to provide notice to those individuals that may be sued, but rather to put the facility on notice of the issues that plaintiff is complaining about to provide the facility an opportunity to correct any shortcomings. *See Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 582 (7th Cir. July 13, 2010); *See also Anderson v. Larry*, No. 21-cv-944, 2022 WL 17357434, at *15 (N.D. Ill. Dec. 1, 2022).

Grievance No. 1385-06-21 only complains about the conduct of field services, and not the conduct of Defendants Raoul or Jeffreys. Plaintiff states throughout the grievance that he believes that field services had been "misleading" him about the process of locating housing for his MSR. (Doc. 34, Exh. 1, p. 14). Based on the content of the grievance, the prison would not know to investigate Defendant Raoul's or Jeffreys' conduct. Even if the grievance did suggest oversight by Raoul or Jeffreys in the MSR process or over those employees in field services, Section 1983 lawsuits do not permit plaintiffs to pursue *respondeat superior* liability. *See, e.g., Gray v. Taylor*, 714 F.Supp.2d 903, 911 (N.D. Ill. 2010) (noting that "Section 1983 creates a cause of action based on personal liability and predicated upon fault . . . to be liable under § 1983, an individual must have caused or participated in the constitutional deprivation."). Thus, Grievance No. 1385-06-21 cannot properly exhaust Plaintiff's claims either.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is **GRANTED**. (Doc. 34). The Clerk of Court is directed to enter judgment accordingly in favor of Defendants Raoul and Jeffreys and close the case.

**IT IS SO ORDERED.**

**DATED: October 10, 2023.**

Digitally signed by Judge Sison
Date: 2023.10.10 13:55:39 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**